UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARC RIOUX, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IDSCAN.NET, INC.,<br><br>Defendant. | Case No. 2:26-cv-01932<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff, MARC RIOUX ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant IDScan.net, Inc. ("Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## I. NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive personally identifiable information ("PII" or "Private Information") that was compromised as a result of a cyber incident (the "Data Breach" or "Breach").

2. Defendant is an identity verification and ID scanning technology company based in New Orleans, Louisiana, that helps businesses ("Clients") authenticate documents, verify age, and prevent fraud.

3. In the course of its regular business operations, Defendant collects and stores a substantial amount of PII. Defendant has a resulting duty to ensure the PII it maintains is safeguarded from unauthorized disclosure.

4. Upon information and belief, Defendant recently experienced unauthorized access to its IT Network that resulted in more than 153 million driver's license scans, together with millions of other government-issued identification documents—including state identification cards, international travel cards, and medical and marijuana-dispensary cards—as well as the front- and back-side images and infrared and ultraviolet scans of such documents, that Plaintiff and Class Members entrusted to Defendant, either directly or indirectly, being placed on the Dark Web for sale.[1]

5. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering it an easy target for cybercriminals.

6. On information and belief, and as of the filing of this Complaint, Defendant has not provided timely and adequate notice of the Data Breach, leaving victims vulnerable to identity theft without adequate warning to monitor their accounts and credit reports to prevent unauthorized use of their PII.

7. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8. In failing to adequately protect the PII in its care and, on information and belief, failing to provide timely and adequate notice of the breach, Defendant harmed an unknown number of the individuals whose identity documents were scanned or processed through its platform,

[1] https://www.malwarebytes.com/blog/news/2026/09/dark-web-site-puts-153-million-drivers-licenses-and-millions-more-ids-up-for-sale

including Plaintiff and Class Members.

9. Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII, either directly or indirectly. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## II. PARTIES

11. Plaintiff is a natural person and citizen of Georgia, where he intends to remain.

12. Defendant IDScan.net, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 2045 Lakeshore Drive, Suite 526, New Orleans, Louisiana 70122. Accordingly, Defendant is a citizen of Delaware and Louisiana under 28 U.S.C. § 1332(c)(1). Defendant's registered agent for service of process in Louisiana is Andrey Stanovnov, 2045 Lakeshore Drive, Suite 526, New Orleans, Louisiana 70122.

## III. JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

14. Minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). Defendant is a citizen of Delaware and Louisiana. Plaintiff, a citizen of Georgia, has citizenship different from Defendant, satisfying the minimal-diversity requirement. Based on public reporting of the alleged Data Breach, the Class comprises well over 100 members and, on information and belief, numbers in the millions. Additionally, many Class Members are citizens of other states than Defendant.

15. The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business or business venture in this State.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is based in this District, and the acts and omissions giving rise to Plaintiff's and Class Members' claims occurred in and emanated from this District.

## IV. BACKGROUND

### A. *Defendant Collected and Stored the PII of Plaintiff and the Class*

17. Defendant is an identity verification and ID scanning technology company based in New Orleans, Louisiana, that helps businesses authenticate documents, verify age, and prevent fraud.

18. As part of its business, Defendant receives and maintains the PII of thousands of individuals.

19. The information held by Defendant at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

20. Upon information and belief, Defendant made promises and representations to individuals that the Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

21. Plaintiff and Class Members provided their Private Information to the Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

22. Plaintiff and Class Members have taken reasonable steps to maintain the

confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

23. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep individuals Private Information safe and confidential.

24. Defendant had obligations under the FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

25. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B. *Defendant's Data Breach***

27. Upon information and belief, Defendant recently experienced unauthorized access to its IT Network that resulted in more than 153 million driver's license scans, together with millions of other government-issued identification documents—including state identification cards, international travel cards, and medical and marijuana-dispensary cards—as well as the front- and back-side images and infrared and ultraviolet scans of such documents, that Plaintiff and Class

Members entrusted to Defendant, either directly or indirectly, being placed on the Dark Web for sale.2 The Data Breach was publicly reported on or before September 1, 2026. The precise date on which the intrusion began, and the date on which Defendant discovered it, are presently unknown and will be established through investigation and discovery.

28. The compromised data has appeared on a site called "Nexus[3]":




29. Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry-standard practices in securing individuals' PII. The alleged scale, sensitivity, and duration of the exfiltration—more than 153 million driver's license scans and millions of other identity documents, allegedly listed for sale on the Dark Web—support the inference that Defendant failed to implement reasonable safeguards.

30. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its individuals PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

### C. *Plaintiff's Experience and Injuries*

---

[2] https://www.malwarebytes.com/blog/news/2026/09/dark-web-site-puts-153-million-drivers-licenses-and-millions-more-ids-up-for-sale

[3] https://krebsonsecurity.com/2026/09/fbi-probes-service-selling-153m-drivers-licenses/ (last visited Sept. 2, 2026).

31. Upon information and belief, Defendant maintained Plaintiff's PII in its systems at the time of the Data Breach.

32. Defendant used that PII to facilitate its business.

33. Plaintiff provided his PII to Defendant, either directly or indirectly, and trusted Defendant would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

34. Plaintiff reasonably understood that Defendant would provide adequate cybersecurity and protection of PII.

35. On information and belief, Plaintiff's PII has already been published—or will be published imminently—by other cybercriminals on the dark web.

36. Through the Data Breach, on information and belief, Defendant compromised at least Plaintiff's name, driver's license number, driver's license image, and other information contained on or derived from Plaintiff's government-issued identification document.

37. Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

38. Plaintiff suffered actual injury in the form of damage to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

39. As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords,

and monitoring his credit information.

40. Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

41. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach.

42. Once an individual's PII is for sale and access on the dark web, as Plaintiff's PII is here as a result of the Data Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[4]

43. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**D. *Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

44. Plaintiff and members of the proposed Class have suffered injury from the compromise, exposure, and alleged dark-web listing of their PII, and the resulting risk of misuse, that can be directly traced to Defendant.

45. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost

[4] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Unauthorized use of stolen PII; and

g. The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

46. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

47. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

48. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

49. One such example of criminals using PII for profit is the development of "Fullz" packages.

50. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

51. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. It is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's compromised PII is at material risk of being misused, and that such risk is fairly traceable to the Data Breach.

52. Defendant failed to prevent unauthorized access to and exfiltration of the PII of Plaintiff and members of the proposed Class, exposing that PII to persons who engage in disruptive and unlawful practices, and thereby creating a risk of online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized accounts (i.e., identity fraud) using the compromised PII.

53. To the extent Defendant failed to provide timely and adequate notice of the Data

Breach, that failure exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and to mitigate the harm caused by the Data Breach.

**E. *Consumers Prioritize Data Security***

54. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[5] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[6]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[7]

c. 89% of consumers stated that "I care about data privacy."[8]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[9]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[10]

---

[5] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf

[6] *Id*. at 3.

[7] *Id*.

[8] *Id*. at 9.

[9] *Id*.

[10] *Id*.

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[11]

55. Defendant knew or should have known that adequate implementation of cybersecurity and protection of PII, including Plaintiff and the Class's PII, was important to the individuals whose identity documents it scanned or processed, including Plaintiff and the Class.

**F. *Defendant failed to adhere to FTC guidelines.***

56. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

57. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal individual information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

58. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

59. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

[11] *Id*. at 11.

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

60. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to the PII of the individuals whose identity documents were scanned or processed through Defendant's platform, including Plaintiff and the Class, constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**G. *Defendant Failed to Follow Industry Standards***

62. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

63. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

64. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

65. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## V. CLASS ACTION ALLEGATIONS

66. Plaintiff sues on behalf of himself and the proposed Classes ("Classes"), defined as follows:

> All individuals residing in the United States whose PII was compromised in the Data Breach (the "Nationwide Class").

67. Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

68. Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

69. **Numerosity**. The proposed Class is so numerous that joinder of all members is impracticable. Based on public reporting and the alleged listing on the Nexus service, the compromised dataset is reported to include more than 153 million driver's license scans and

millions of other identity documents.

70. **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control.

71. **Typicality**. Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same alleged failure to provide timely and adequate notice of the Data Breach.

72. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Plaintiff's interests do not conflict with Class members' interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

73. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

v. Whether the Data Breach caused Plaintiff and the Class injuries;

vi. What the proper damages measure is; and

vii. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

74. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs' are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

75. Plaintiff realleges all previous paragraphs as if fully set forth below.

76. Plaintiff and members of the Class entrusted their PII, either directly or indirectly, to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

77. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by failing to prevent unauthorized access to and exfiltration of this information by third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

78. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

79. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff' and members of the Class's personal information and PII.

80. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

81. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

82. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. To the extent Defendant failed to provide reasonably timely and adequate notice of the Data Breach to Plaintiff and members of the

Class, that failure exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

83. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the compromise and unauthorized access to and exfiltration of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Nationwide Class)**

84. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

85. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

86. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive PII.

87. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

88. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

89. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

90. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

91. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

92. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

93. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**COUNT III**
**Breach of Third Party Beneficiary Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

94. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

95. Defendant entered into contracts, written or implied, with its Clients to perform services that include, but are not limited to, identity verification, age-checking, and ID-scanning. Upon information and belief, these contracts required Defendant to implement reasonable data-security measures to protect the Private Information of the individuals whose identity documents were processed, including Plaintiff and Class Members, who were affected by the Data Breach.

96. In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

97. Upon information and belief, Plaintiff and Class Members were intended third-party beneficiaries of the contracts entered into between Defendant and its Clients, which required Defendant to safeguard their Private Information. Defendant knew that if it were to breach these contracts with its Clients, its Clients' customers—Plaintiff and Class Members—would be harmed

98. Defendant breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

99. Plaintiff and the Class were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

100. Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

101. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

102. Plaintiff and Class Members conferred a benefit on Defendant by permitting Defendant's Clients to turn over their PII to Defendant. Moreover, upon information and belief, Plaintiff alleges that payments made by Defendant's Clients to Defendant included payment for cybersecurity protection to protect Plaintiff and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendant Clients for their services. Plaintiff and Class Members did not receive such protection.

103. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by its Clients on behalf of Plaintiff and Class Members.

104. As such, upon information and belief, a portion of the payments made by Plaintiff and Class Members was to be used to provide a reasonable and adequate level of data security in compliance with applicable state and federal regulations and industry standards, and the portion of each payment allocated to data security is peculiarly within Defendant's knowledge.

105. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for

adequate cybersecurity practices that it failed to provide.

106. Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff and Class Members' Private Information and prevented the Data Breach.

107. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

108. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant's to be permitted to retain the benefit of its wrongful conduct.

109. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) the risk of identity theft and misuse; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued

possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

110. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

111. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**PRAYER FOR RELIEF**

Plaintiff and Class Members demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and Class Members;

D. Requiring Defendant to adopt and maintain reasonable data-security measures to protect the identity-document data retained in its possession;

E. Awarding Plaintiff and Class Members damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and Class Members in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and Class Members leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September, 2026.

Respectfully submitted,

*/s/ Scott J. Falgoust*
Scott J. Falgoust (LA S.B. # 33545)
Andrew A. Lemmon (LA S.B. # 18302)
**BRYSON HARRIS SUCIU DEMAY, PLLC**
5301 Canal Boulevard
New Orleans, Louisiana 70124
Telephone: (919) 585-4634
Email: sfalgoust@brysonpllc.com

Leanna A. Loginov (*pro hac vice* forthcoming)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

*Attorneys for Plaintiff and the Proposed Class*